```
                                    ┌─────────────────────────────┐
                                    │ USDC SDNY                   │
                                    │ DOCUMENT                    │
                                    │ ELECTRONICALLY FILED        │
                                    │ DOC #:_____        │
                                    │ DATE FILED:__10/24/19___    │
                                    └─────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
YUSUF SPARKS,                                    :          18 Civ. 10704 (VEC) (RWL)
                                                 :
                          Petitioner,            :
                                                 :
              - against -                        :          **REPORT AND RECOMMENDATION**
                                                 :          **TO THE HON. VALERIE E. CAPRONI:**
                                                 :          <u>**HABEAS CORPUS**</u>
                                                 :
PAUL CHAPPIUS,                                   :
                                                 :
                          Respondent.            :
------------------------------------------------------------X

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

Yusuf Sparks, proceeding *pro se*, brings this Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction for second-degree assault following a jury trial in New York State Supreme Court, New York County.  Sparks argues that he was deprived of the right to a fair trial because: (1) the trial court erred by not charging the jury with the defense of justification, and (2) the trial court erred in modifying its *Sandoval* ruling to permit the prosecution to cross-examine Sparks on his prior conviction for robbery.[1]  For the reasons that follow, I recommend that Sparks' Petition be DENIED and the case be DISMISSED.

## Factual and Procedural Background

Following a jury trial, Petitioner Yusef Sparks ("Sparks" or "Petitioner") was convicted of assault in the second degree in connection with an attack on Reginald

---

[1] The Petition names Paul Chappius, Superintendent of the Elmira Correctional Facility where Sparks is detained, as Respondent. Respondent is represented by the New York State Attorney General in this proceeding.

1

Randolph ("Randolph") in the early hours of December 21, 2012.[2]  The trial court sentenced Sparks – as a second-time violent felony offender – to a prison term of seven years, followed by five years of post-release supervision. The Appellate Division, First Department, affirmed the conviction, and the New York State Court of Appeals affirmed the First Department's order. *People v. Sparks*, 132 A.D.3d 513 (1st Dep't 2015), aff'd, 29 N.Y.3d 932 (2017). Below, the Court recounts the factual and procedural background before discussing the merits of the Petition.

## A.    The Assault

At the time of the relevant events, Sparks was 19 years old and living with his grand aunt on 148th Street between Amsterdam Avenue and Broadway in Manhattan.[3] (T. 219.) On the night of December 21, 2012, he and his cousin went to a local store on the corner of 147th Street and Amsterdam Avenue to purchase groceries. (T. 221)

Adel Alrbyai ("Alrbyai"), 37 years old, was working at the store that night. (T. 167-68.) At approximately 1:00 a.m. – before Sparks and his cousin arrived – Randolph, 50 years old, entered the store. (*Id.*) Randolph had visited the store in the past, and Alrbyai knew him. (T. 168) Because of his mannerisms, he believed that Randolph was

---

[2] As explained herein, Randolph was referred to by a variety of nicknames throughout the trial, including "Reggie," "TP" and "The Punisher," but the Court will generally refer to him as Randolph unless otherwise noted.

[3] "T" indicates a reference to the trial transcript. "R." indicates a reference to the habeas Record, filed by the New York State Attorney General. (Dkt. 16.) The Record is comprised of a 1,759-page document that begins with a formal Answer to Petition for a Writ of Habeas Corpus (R. 1-3); Memorandum of Law in Opposition to Petition for a Writ of Habeas Corpus (R. 4-31); the State Court Record (R. 32-720); and the State Court Transcript (R. 721-1,759). For ease of reference, the Court will refer to "R. __" to refer to a particular page of the 1,759-page PDF document, or "T. __" to refer to a particular page of the trial transcript. (R. 742-1224).

intoxicated. (T. 169.) Randolph was standing by the door and speaking to customers. (*Id.*) Although he was not threatening them or asking for money, he was "telling his life story." (T. 169-70) Alrbyai asked him to leave. (T. 170.) He initially refused, but then Alrbyai gave him a cigarette and a beer, and Randolph left the store without incident. (*Id.*)

While Randolph was gone, Sparks approached the store. (T. 171.) At trial, Sparks testified that Randolph approached Sparks outside of the store, and they exchanged hostile words. (*Id.*) Sparks knew Randolph prior to this incident, colloquially referring to him during the trial as "TP," "the Punisher," or "Reggie." (T. 221-22.)  Sparks testified that Randolph was a "bully of the neighborhood" and that they had previous altercations. (T. 221-22.)  Both men entered the store together, and proceded to the back. (T. 223-24.) Sparks testified that Randolph had his hand in his pocket and "insinuated that he had a gun" (*Id.*), which Sparks believed because Randolph was "known for carrying weapons." (T. 236-37). Sparks testified that Randolph aimed the object and demanded Sparks' coat.[4] Sparks tried "to walk around the store," but Randolph was acting "drunk" and "very aggressive." (T. 224-25, 249.) Alrbyai again asked Randolph to leave, but he did not. (T. 249.) Randolph and Sparks then had a physical altercation. (*Id.*) Testimony at trial differed on how the altercation began (T. 225-26, 249-51), but at some point, Sparks struck

---

[4] On April 28, 2011, Sparks had been convicted of an unrelated felony. (T. 220.) In that case, on June 21, 2010, he had approached his victim, placed his hand under his shirt, and said, "I have a gun. Don't move or I'll shoot and kill you." When the victim screamed, Sparks replied, "I have a gun. I'll beat your ass." Thus, when Randolph had attempted to rob him by pretending to have a gun, Sparks testified that it was "[j]ust like" what he himself had done that led to his prior felony conviction. He was still on parole for that crime at the time of this incident. (T. 276-77.)

Randolph who fell to the floor. (T. 171-72.) Randolph was bleeding, and Alrbyai escorted him out of the store. (*Id.*)

After that encounter, Sparks left the store and went to a nearby chicken restaurant where he ate. (T. 225-26, 249-51.) Sparks then returned to the store, where he saw Randolph "stumble by" outside the entrance, apparently still wandering in the vicinity. Sparks testified that he was frightened because a "crack addict will do anything" and Randolph "had time to get whatever he wanted to get" while Sparks had been in the chicken restaurant, such as a weapon. (T. 226-27.) At this point, Sparks found a milk crate and forcefully hit Randolph in his head with it. (*Id.*) Alrbyai did not see Sparks strike Randolph, but when Alrbyai went outside, he did see Randolph laying on the ground bleeding, and the milk crate on the sidewalk. (T. 173.)

Around the same time, Police Officers Gregory Santana and Fabrizio Randazzo were in a patrol car driving south on Amsterdam Avenue. (T. 74, 93.) While they were stopped at the red light at 147th Street, Officer Santana personally observed Sparks, who was standing by a nearby deli, take the milk crate and hit Randolph with it. (T. 93.) Officer Randazzo immediately pulled their vehicle near the deli and the two officers exited; Officer Santana instructed Sparks to walk back with him toward the deli, where Randolph was lying on the ground. (T. 94.) Officer Randazzo approached Randolph and called for an ambulance. (*Id.*) Officer Randazzo kept talking to Randolph in an attempt to keep him awake, but Randolph kept closing his eyes and only nodded and mumbled in response. (T. 79.) Eventually, backup responded and additional officers arrived on the scene. (*Id.*) By the time they arrived, Randolph was on a stretcher and being placed in an ambulance.

Sparks explained to the officers that Randolph had been "bothering him so he picked up a crate and he hit him over the head." (T. 60.) Thereafter, Sparks was arrested. (T. 61.)

Meanwhile, Randolph was taken to Harlem Hospital where he was treated by Doctor Brian Donaldson, a trauma expert, who testified at trial. (T. 211-13.) Randolph was diagnosed with "moderate" head trauma, bruising and bleeding from the nose. (T. 215.) A CAT scan revealed that Randolph was "bleeding in the brain underneath a layer of the brain . . . in the front part." (*Id.*) The bones on both sides of his nose were broken, as well as his cheekbone. (*Id.*) Dr. Donaldson considered Randolph's injury to be "very serious" and testified that the pressure on his brain could have killed him. (T. 216-17.) At trial, Randolph testified that he had no independent recollection of what happened to him in the early morning hours of December 21, 2012. (T. 109-11.)  Randolph further testified that he was still feeling pain in the back of his head on a "regular" basis. (T. 111.)

## B.    Pre-trial *Sandoval* Hearing

During a pre-trial *Sandoval* hearing on November 13, 2013, prior to jury selection, the prosecution sought the court's permission to inquire about the details of Sparks' criminal record should he choose to testify at trial. (R. 748.) Specifically, the prosecution wanted to cross-examine him to bring to light information about two prior interactions with law enforcement: (1) an April 2011 second-degree attempted robbery conviction for attempting to rob someone while pretending to have a firearm, and (2) a March 2009 Youth Offender adjudication for second degree robbery also pretending to have a firearm. (R. 748-50.) Defense counsel asked the court for a "*Sandoval* compromise," in which the prosecution would only be allowed to elicit that Sparks was convicted of a felony, but without any details about the nature of the crime or conviction. (R. 751.)

The trial court agreed. It precluded any inquiry into Sparks' Youth Offender adjudication, but decided that the prosecution would be permitted to ask Sparks whether and when he had been convicted of a felony. However, the prosecutors could not inquire as to the nature of that crime or its underlying facts. (*Id.*)

Two days after the trial court's *Sandoval* ruling, Sparks' counsel told the court and the prosecution that Sparks would testify at trial. (T. 56-57.) Sparks' counsel further indicated that he would call a witness to testify regarding Randolph's reputation for violence to support a justification defense – that is, an argument that Sparks was acting in self-defense. (T. 4-5.) The prosecution responded that, in light of this new information, it would call witnesses to testify regarding Sparks' own reputation for violence, and further requested a modified *Sandoval* ruling to allow the cross-examination of Sparks in further detail about his April 2011 second-degree attempted robbery conviction. (T. 4-6.)

The trial judge determined that Sparks' anticipated justification defense required it to reconsider its earlier *Sandoval* ruling because Sparks was "now putting his reasonable beliefs, his state of mind in evidence," and accordingly, his "actions" and "his propensity [for violence] would be probative and relevant to any issue of justification." (T. 6.) The trial judge further stated that Sparks' justification defense placed "in issue his state of mind at the very moment he takes that milk crate and hits the victim over the face and head. Is this a reasonable response to the imminent threat of deadly physical force against him measured by a subjective and objective standard or is [Sparks] prone to overreact and to do violence against other people in the street[?] That is the whole case." (T. 8.) With those

considerations in mind, the trial judge ruled that the prosecution would be permitted to question Sparks about underlying facts of his prior conviction.[5] (T. 19.)

The trial proceeded over several days between November 18, 2013 and November 25, 2013. (R. 38.) During cross-examination, the prosecutor elicited from Sparks the fact that he had been convicted of a felony in April 2011 (T. 220), and that the conviction stemmed from a "robbery" he committed on June 21, 2010, during which he "pretended [he] had a gun" by putting his "hand under [his] shirt" and telling the victim "I have a gun … [d]on't move or I'll shoot and kill you." (T. 275-76.)

## C.    The Conviction

On November 25, 2013, following a trial before the Honorable Bonnie Wittner of the New York State Supreme Court, New York County, the jury acquitted Sparks of assault in the first degree, but convicted him of the lesser offense of assault in the second degree. (T. 368-70.) On January 14, 2014, he was sentenced as a second-time violent felony offender, to a prison term of seven years followed by five years of post-release supervision. (R. 1758.)

---

[5] During her final charge, the trial judge advised the jury: "[Y]ou heard in the past this defendant was convicted of a felony. The fact that a defendant has been previously convicted of a crime, is not proof of the instant crime. It is not being offered to prove he has a propensity to commit crime. The only purpose it is being introduced is on the question of the degree of credibility you wish to give to his trial testimony. The defendant's prior conviction may be used by you only for this purpose. You and you alone have the right to determine whether the defendant, despite his convictions telling the truth or because of considering his conviction, he may not be telling the truth. The prior conviction is only a factor to be considered by you in judging the credibility of his in-court testimony. In the same vein you also learned that Reginald Randolph has prior convictions and what the law calls prior bad acts. The fact that person has prior convictions does not disqualify him, but again prior convictions and prior bad acts may be considered by you in assessing the credibility of the witness's in-court testimony." (T. 347.)

**D.      Sparks' Direct Appeal to the Appellate Division, First Department**

Sparks appealed his conviction to New York's Appellate Division, First Department.  In a counseled brief by the Federal Defenders of New York, Sparks argued that (1) the trial court abused its discretion in reversing its *Sandoval* ruling and allowing the prosecution to question Sparks on his prior conviction, (2) the trial court should have charged the jury with the defense of justification, (3) the trial court should have suppressed Sparks' statements to law enforcement while in custody, and (4) the sentence was excessive.  (R. at 125-52.)  Respondent opposed the appeal. (R. at 153-209.)

The First Department affirmed the judgment in full. (R. 249-50.) In relevant part here, that court held that the trial court had properly exercised its discretion in modifying its *Sandoval* ruling. (*Id.*) That court also found that the trial court had properly denied Sparks' request for a justification charge "since there was no reasonable view of the evidence, viewed in the light most favorable to [petitioner], to support that charge." (T. 211.) "Even under [petitioner's] version of … events," the court observed, "any conduct by the victim that might have been the basis for a justification defense [i.e., self-defense] had abated by the time [petitioner] committed the assault." (T. 211.) Finally, the court concluded that, in light of the "overwhelming evidence against [petitioner], any errors regarding the *Sandoval* modification [and] the denial of a justification charge … were harmless. (R: 211.) *People v. Sparks*, 132 A.D.3d 513, 513-14 (1st Dep't 2015).

**E.      Sparks' Appeal to the New York State Court of Appeals**

Sparks further appealed his conviction to the New York State Court of Appeals. In his counseled brief, again with the assistance of the Federal Defenders of New York, Sparks argued that his Constitutional due process right to a fair trial was violated by (1)

the trial court's refusal to instruct the jury on a justification charge and (2) its modification of the pre-trial *Sandoval* ruling.[6] (R. 253-296.) Again, Respondent opposed the appeal. (R.  657-718.)

In a March 30, 2017 decision, the Court of Appeals affirmed the First Department's order in full. (R. 1243-1247.) The court rejected Sparks' challenge to the trial court's refusal to charge the justification defense, finding that no reasonable view of the evidence "objectively support[ed] a belief that [petitioner] was in danger of being physically harmed by the victim at the time [petitioner] used force against him." (R. 1246.) The court further observed that Sparks "was able to freely and safely walk away from the bodega" after his initial encounter with the victim, and "there simply is no evidence that, once he returned to the bodega, [petitioner] needed to leave that store to strike the victim to defend himself." (R. 1247.) "Put simply," the court concluded, "the surveillance footage reflects that [petitioner]'s ambush of the victim with the milk crate cannot be considered self defense[.]" (R. 1248.) As for Sparks' second claim protesting the *Sandoval* ruling that permitted his cross-examination on his prior robbery conviction, the court concluded that cross-examination was ultimately "harmless" and "immaterial" because the proof of Sparks' guilt was "overwhelming" and there was "no significant probability" that the *Sandoval* ruling affected the jury's verdict. (R. 1248-49.) *People v. Sparks*, 29 N.Y.3d 932, 934-35, 51 N.Y.S.3d 14, 15-16 (2017).

---

[6] In his appeal to the Court of Appeals, Sparks dropped his two other claims, namely that the trial court should have suppressed his statement to law enforcement and that his sentence was excessive.  As Sparks does not assert those arguments in his instant Petition (Dkt. 1), this Court does not discuss these two arguments further.

**F.      Sparks' Instant Petition**

Sparks filed his *pro se* Petition for Writ of Habeas Corpus on July 3, 2018 in the U.S. District Court for the Western District of New York. (Dkt. 1.)  Asserting the same arguments as the appeal to the Court of Appeals, the Petition claims that Sparks' due process right to a fair trial was violated when the trial court: (1) refused to charge the jury on the defense of justification, and (2) modified its *Sandoval* ruling to permit the prosecution to cross-examine him regarding the facts his April 2011 felony conviction.

On October 19, 2018, the Honorable Elizabeth A. Wolford, U.S.D.J., entered an order transferring the case to the U.S. District Court for the Southern District of New York, explaining that all records relating to Sparks' underlying conviction are located in this District. (Dkt. 2.)  The case was formally transferred to this Court on November 19, 2018 (Dkt. 4) and assigned to the Honorable Valerie E. Caproni, U.S.D.J.  Shortly thereafter, Sparks sought and obtained permission to proceed *in forma pauperis*. (Dkt. 6.)

On January 16, 2019, Judge Caproni entered an Order to Answer (Dkt. 8) and referred this matter to the undersigned for a Report and Recommendation on Sparks' Petition. (Dkt. 9.) Following two extensions of its deadline to file (Dkt. 14, 15), the New York State Attorney General filed its response to the Petition on June 7, 2019 consisting of (1) the Answer to Petition for a Writ of Habeas Corpus; (2) Memorandum of Law in Opposition to Petition for a Writ of Habeas Corpus; (3) the State Court Record; and (4) the State Court Transcript. (Dkt. 16.)

## Legal Standards

### A.   AEDPA Standards

The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides a remedy for a state prisoner when his continued custody is in violation of federal law.  28 U.S.C § 2254(a).  Under AEDPA, an application for a writ of habeas corpus on behalf of a state prisoner "shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim" either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).   "Deciding whether a state court's decision 'involved' an unreasonable application of federal law or 'was based on' an unreasonable determination of fact requires the federal habeas court to 'train its attention on the particular reasons – both legal and factual – why state courts rejected a state prisoner's federal claims,' and to give appropriate deference to that decision."  *Wilson v. Sellers*, 587 U.S. __, __, 138 S. Ct. 1188, 1191-92 (2018) (quoting *Hittson v. Chatman*, 576 U. S. __, __, 135 S. Ct. 2126, 2126 (2015) (Ginsburg, J., concurring in denial of certiorari)).

A state court decision is "contrary to" clearly established precedent when the state court applies a rule that is "diametrically different, opposite in character, or mutually opposed" to the governing law set forth in Supreme Court cases.  *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (internal quotations omitted).  By contrast, "[a] court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle . . . but unreasonably applies it to the facts of the particular case."

11

*Bell v. Cone*, 535 U.S. 685, 694 (2002) (quoting *Williams*, 529 U.S. at 407-8).  This inquiry focuses not on whether the state court's application of clearly established federal law is merely incorrect or erroneous, but on whether it is "objectively unreasonable."  *Id.*  "Under [Section] 2254(d), a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fair-minded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court."  *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

AEDPA forecloses "using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts."  *Parker v. Matthews*, 567 U.S. 37, 38 (2012) (per curiam) (quoting *Renico v. Lett*, 559 U.S. 766, 779 (2010)).  "A state court's findings are not unreasonable under [Section] 2254(d)(2) simply because a federal habeas court reviewing the claim in the first instance would have reached a different conclusion."  *Pine v. Superintendent, Green Haven Correctional Facility*, 103 F. Supp. 3d 263, 275 (N.D.N.Y. 2015) (citing *Wood v. Allen*, 558 U.S. 290, 301 (2010)).  "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold."  *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

Even if a trial court error meets the standards required by AEDPA, habeas relief is not warranted unless the violation "had substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)); *see also Fry v. Pliler*, 551 U.S. 112, 121 (2007) (confirming continued applicability of *Brecht* under AEDPA); *Bentley v.*

*Scully*, 41 F.3d 818, 824 (2d Cir. 1994) ("Habeas relief is not appropriate when there is merely a 'reasonable possibility' that trial error contributed to the verdict.") (quoting *Brecht*, 507 U.S. at 635)); *Butler v. Graham*, No. 07 Civ. 6586, 2008 WL 2388740, *6 (S.D.N.Y. June 12, 2008) (recognizing and applying "substantial and injurious effect standard" and citing *Brecht* and *Fry*).

A federal habeas petitioner "bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated." *Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir. 1997). A petitioner also bears "the burden of rebutting the presumption of correctness" of state court fact determinations "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Where, as here, a petitioner is proceeding *pro se*, a court must construe his submissions liberally and interpret them "to raise the strongest arguments that they suggest." *Kirkland v. Cablevision System*, 760 F.3d 223, 224-25 (2d Cir. 2014) (per curiam) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). This does not, however, excuse a petitioner "from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (internal quotations omitted).

AEDPA imposes several threshold requirements on habeas petitioners, including that petitioners must first exhaust their claims in state court. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *Galdamez v. Keane*, 394 F.3d 68, 72 (2d Cir. 2005). The exhaustion requirement is designed to provide state courts with the "opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Jackson v. Edwards*, 404 F.3d 612, 619 (2d Cir. 2005) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)); *see Galdamez*, 394 F.3d at 72-73 (explaining that comity concerns

"lie at the core of the exhaustion requirement").  The Second Circuit has cautioned against "interpreting [the exhaustion] provision too narrowly," citing the Supreme Court's holding that exhaustion requires "only that state prisoners give state courts a *fair* opportunity to act on their claims."  *Galdamez*, 394 F.3d at 72 (quoting *O'Sullivan*, 526 U.S. at 844).

The exhaustion inquiry involves two related questions.  "First, a federal court must examine whether applicable state court remedies remain available to the petitioner."  *Id.* at 73.  A petitioner need not have invoked every possible avenue of state court review, but instead must "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *Id.* (citing *O'Sullivan*, 526 U.S. at 845).  A "complete round" requires presenting the federal claim to the highest court of the state, which in this case is the New York State Court of Appeals.  *Id.*; *see also Morgan v. Bennett*, 204 F.3d 360, 369 (2d Cir. 2000)).

"Second, and often of central concern in habeas proceedings," the federal court must assess whether the petitioner properly exhausted the state court remedies by having "fairly presented his claims to the state courts, such that the state court had a fair opportunity to act."  *Id.* (quoting *O'Sullivan*, 526 US. at 848).  Substantively, the petitioner must have "fairly presented" his claim to state courts by apprising them of "both the factual and the legal premises of the claim [he] asserts in federal court."  *Jones*, 126 F.3d at 413 (quoting *Daye v. Attorney General of State of New York*, 696 F.2d 186, 191 (2d Cir. 1982) (en banc)).  Although the petitioner need not "cite chapter and verse of the Constitution in order to satisfy this requirement, he must tender his claim in terms that are likely to alert the state courts to the claim's federal nature."  *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014) (internal quotation marks omitted) (quoting *Carvajal v. Artus*, 633 F.3d

14

95, 104 (2d Cir. 2011)).  A petitioner may meet this requirement by presenting the claim in any of the following ways:

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution,  and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Strogov v. Attorney General of State of New York*, 191 F.3d 188, 191 (2d Cir. 1999) (quoting *Daye*, 696 F.2d at 194).

## B.     Standards for Jury Charge of Justification in New York

Sparks' first claim in his Petition implicates whether the New York State trial judge was required to charge the jury with an instruction of the legal defense of justification. Accordingly, the Court will review the relevant legal standard for such a determination.

Generally, "criminal conduct is justifiable when it 'is necessary as an emergency measure to avoid an imminent public or private injury which is about to occur . . . which is of such gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of avoiding such injury clearly outweigh the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue.'" *People v. Perry*, 19 N.Y.3d 70, 73, 967 N.E.2d 1195, 1197 (2012) (quoting Penal Law § 35.05[2]). A justification defense permits a person to "use physical force upon another person when and to the extent he reasonably believes such to be necessary to defend himself . . . from what he reasonably believes to be the use or imminent use of unlawful physical force by such other person."   Penal Law § 35.15(1).  However, a defendant relying on such a defense also has a duty to retreat, if reasonably possible, before engaging in the use of force.  *Perry*, 19 N.Y.3d at 74.

15

Under the reasonable belief standard, the jury must first determine if the defendant actually believed that force was necessary to avert the threat against him. If so, the jury must then decide whether, in light of all the circumstances, a reasonable person could have held that same belief. *People v. Goetz*, 68 N.Y.2d 96, 115 (1986); *see also People v. Umali*, 10 N.Y.3d 417, 425 (2008); *Matter of Y.K.*, 87 N.Y.2d 430, 434 (1996). Thus, the standard is not a purely "subjective" one, under which a "genuine" belief that the requisite danger exists is enough. *Goetz*, 68 N.Y.2d at 111. Instead, the defense also requires an "objective" element. *Id.* at 107.

It is well-established under New York law that a defendant is entitled to a jury charge on justification only if there is a reasonable view of the evidence that supports the elements of the defense. *People v. Cox*, 92 N.Y.2d 1002, 1004-05 (1998) ("A trial court must instruct a jury on the defense of justification 'if on any reasonable view of the evidence, the fact finder might have decided that the defendant's actions were justified')" (quoting *People v. Padgett*, 60 N.Y.2d 142, 145, 456 N.E.2d 795 (1983)). Where no such view of the evidence exists, however, a trial court is not required to instruct the jury on the justification defense. *See People v. Moore*, 15 N.Y.3d 811, 813 (2010) (defendant "cannot show that he was entitled to a justification charge under any favorable interpretation of the testimony presented at trial"); *People v. Watts*, 57 N.Y.2d 299, 301-02 (1982) ("the court's denial of defendant's requested charge was not error" where evidence presented at trial did not support such a charge, and defendant did not meet his duty to retreat from potential harm); *People v. Williams*, 123 A.D.3d 527, 528 (1st Dep't 2014) (justification charge to jury is not warranted if the trial court finds that either the "objective" or "subjective" elements of the defense are not established by the evidence presented at

16

trial). Nor may a defendant avail himself of a justification charge based on an "artificial or irrational" view of the evidence (*People v. Butts*, 72 N.Y.2d 746, 750 (1988)), or by "call[ing] upon the jury to speculate as to a version of the events that was not supported by any of the testimony." *People v. Perez*, 308 A.D.2d 359, 360 (1st Dep't 2003).

The U.S. Supreme Court has instructed that a state court's failure to give a particular jury instruction will ordinarily not raise a federal question unless that failure "so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). Federal courts "must of course defer to state-court interpretations of the state's laws, so long as those interpretations are themselves constitutional" when deciding whether the evidence requires a particular jury instruction under state law. *Davis v. Strack*, 270 F.3d 111, 123 n.4 (2d Cir. 2001). In deciding whether the failure to give a jury instruction on a particular defense, such as justification, violated a habeas petitioner's federal due process rights, a district court must first find that the petitioner was "erroneously deprived of a jury instruction to which he was entitled under state law." *Id.* at 123. If the court makes that finding, it must then ask whether the failure to give the requested charge was so harmful as to render the conviction unfair. *Jackson*, 404 F.3d at 621 (habeas court must find that "the failure to give such a [justification] charge was sufficiently harmful to make the conviction unfair"); *Graham v. Lape*, 476 F. Supp. 2d 399, 404 (S.D.N.Y. 2007) (dismissing habeas petition where trial judge found no evidentiary basis for the elements of the defendant's requested jury charge).

C.     **Standards for** *Sandoval* **Hearing**

Sparks' second claim in his Petition implicates whether the trial judge erred in allowing the prosecution to cross-examine him on the facts surrounding his prior conviction for robbery in an unrelated incident. This trial judge's ruling followed a *Sandoval* hearing. Accordingly, the Court will review the relevant legal standard for such a determination.

A *Sandoval* hearing is a New York court evidentiary hearing to determine whether and to what extent a defendant may be cross-examined about prior convictions and bad acts to impeach the defendant's credibility. *People v. Sandoval*, 34 N.Y.2d 371, 374 (1974). In *Sandoval*, the New York Court of Appeals established parameters for the scope of cross-examining a defendant about his prior "criminal, vicious and immoral acts." *Id.* at 373; *see also Green v. Kirkpatrick*, No. 17 Civ. 1997, 2018 WL 3059996, at *3 (S.D.N.Y. March 6, 2018), report and recommendation adopted, No. 17 Civ. 1997, 2018 WL 3059651 (S.D.N.Y. June 20, 2018) (explaining *Sandoval* standards).

*Sandoval* requires the trial court to balance the probative worth of evidence of prior criminal acts on the issue of a defendant's credibility against the risk of unfair prejudice to the defendant, measured both by the impact of such evidence if it is admitted and by the effect its probable introduction may have in discouraging the defendant from taking the stand. *Id.* at 375. This balancing is an exercise within the court's discretion. *Id.* at 375; *People v. Davis*, 44 N.Y.2d 269, 274 (1978) (same).

Relevant factors to a *Sandoval* determination by a trial court include the lapse of time since the prior convictions, similarity between the prior convictions and the charged crimes, and whether the prior convictions bear on the defendant's credibility and

18

veracity. *Sandoval*, 34 N.Y.2d at 376–77. These factors, however, are neither definitive nor exhaustive. *People v. Williams*, 56 N.Y.2d 236, 239-40 (1982); *Sandoval*, 34 N.Y.2d at 378 ("Obviously there are other relevant factors and considerations, to be identified and refined in the vitality and sagacity of the common-law process").

To bear on credibility, a prior crime need not be one that has elements of deceit or dishonesty. That is because "[t]o the extent . . . that the prior commission of a particular crime of calculated violence or of specified vicious or immoral acts significantly revealed a willingness or disposition on the part of the particular defendant voluntarily to place the advancement of his individual self-interest ahead of principle or of the interests of society, proof thereof may be relevant to suggest his readiness to do so again on the witness stand." *Sandoval*, 34 N.Y. at 377. In short, a "demonstrated determination deliberately to further self-interest at the expense of society or in derogation of the interests of others goes to the heart of honesty and integrity." *Id.*

The burden lies with the defendant to demonstrate that the prejudicial effect of allowing cross-examination about prior crimes for impeachment purposes sufficiently outweighs their probative worth so as to merit exclusion. *Id.* at 378.

## Discussion

The Court begins by reviewing the threshold requirement that Sparks must exhaust his federal claims in state court, and concludes that he has done so. On the merits, however, his two claims fail, and accordingly the Petition should be dismissed.

## I.   Sparks Exhausted His Claims

As an initial matter, this Court must consider whether Petitioner properly exhausted

his claims in state courts in order to merit review by a federal habeas court.

In his state appellate submissions, Sparks "fairly presented" his claims, apprising the state courts of "both the factual and the legal premises" of the two due process claims he now asserts in federal court. *Vacco*, 126 F.3d at 413 (quoting *Daye*, 696 F.2d at 191). Sparks' appellate submissions extensively set forth the same facts Sparks now raises in his petition. (*Compare* R. 158-177 *with* Petition at 7-8.)

As to the legal issues presented on appeal, Sparks expressly and repeatedly contended that he had been denied due process and a fair trial. (*See, e.g.*, R. 104 (questions presented concluding that the state court proceedings "deprived appellant of his state and federal right to due process" and "deprived appellant of due process and undermined confidence in the jury's guilty verdict"), 125, 137 (same statements in argument headings), 228 (alleging that the trial court's errors "considered alone and cumulatively, deprived Mr. Sparks of his state and federal constitutional due process rights to a fair trial").) He also expressly cited to the applicable provision of the U.S. Constitution. (R. at 104 (citing U.S. Const., Amend. XIV), 125 (same), 137 (same), 245 (same), 253 (same).) Sparks' invocation of the Constitution, due process and fair trial rights, combined with his factual recitations, more than sufficiently alerted the state appellate courts to a federal constitutional issue. *See Daye,* 696 F.2d at 192 ("Obviously if the petitioner has cited the state courts to the specific provision of the Constitution relied on in his habeas petition, he will have fairly presented his legal basis to the state courts" and met the exhaustion requirement).

Because Sparks has satisfied the exhaustion requirement, his two claims are preserved and now properly before the federal habeas court. Accordingly, the Court may

address the merits of his Petition.

## II.     Sparks' Claims Fail on the Merits

### A.     The Trial Court Did Not Err by Refraining from Charging the Jury with the Defense of Justification

Sparks argues that the trial court's refusal to charge the jury with the defense of justification violated his due process rights. (Petition at 7.) Respondent argues that there was no reasonable view of the evidence that would have supported such an instruction to the jury. (Resp. Mem. at 13-18.) This claim was raised on direct appeal and rejected on the merits by both the First Department and the Court of Appeals. Both courts agreed with the trial court that Sparks' account of the incident could not serve as a basis for a reasonable juror to make a finding that he acted in self-defense. This Court agrees as well, and finds that the state courts' rejection of the claim was neither contrary to, nor an unreasonable application of, clearly established federal law. Accordingly, the claim does not merit habeas relief.

As outlined above, a trial court is not required to instruct a jury on a justification charge where no reasonable juror could conclude that there was an objective justification. *See Cox*, 92 N.Y.2d at 1005 (trial court properly refused to charge justification where defendant's testimony showed a "substantial period elapsed" between the victim's initial provocation and the defendant's use of deadly force); *People v. Dunston*, 136 A.D.3d 529, 530 (1st Dep't 2016) (justification defense instruction not warranted where, at the time that the defendant used physical force against the victim, "any threat that the victim might use deadly force had clearly abated"); *People v. Bennett*, 279 A.D.2d 585, 585 (2d Dep't 2001) (trial court properly refused to instruct jury on justification where, at the time the defendant used physical force, the victim "was no longer armed and, therefore, the

defendant was no longer facing the imminent use of deadly physical force against him").

Here, the trial judge acted appropriately in not charging the jury with the justification defense. At trial, there was testimony that Randolph attempted to rob Sparks in the store, asking for his coat and pretending to have a weapon. (T. 222.) Yet that purported robbery could not support the defense of justification for Sparks' hitting Randolph in the head with a milk crate, given that the purported robbery had already terminated long before the second altercation. (T. 224.) As the Court of Appeals observed, Sparks had ample time after that purported robbery and "was able to freely and safely walk away from the bodega" after Randolph purportedly tried to rob him. (R. 1213.) Instead, Sparks chose to return to the store after eating dinner at a nearby restaurant, and only then committed the attack with the milk crate. (*Id.*)

As Respondent emphasizes, any defense that Sparks could have offered with respect to his self-defense justification would have been severely "hampered" by the fact that the prosecution showed the jury surveillance video of Randolph "stumbling outside the store when petitioner [approached] him with a milk crate." (Resp. Mem. at 15.) A reasonable juror would have seen that Sparks struck Randolph without any proximate provocation, undermining any argument that his actions were based on fear from their prior encounter in the store. (Resp. Mem. at 15-16.) Analyzing this same argument, the First Department correctly reasoned that, even under Sparks' version of events, "any conduct by [Randolph] that might have been a basis for a justification defense had [long] abated" by the time Sparks struck him. (T. 211).

Sparks testified that he still had cause to fear Randolph at the time he struck Randolph with the milk crate, citing Randolph's reputation as the "bully of the

neighborhood" and alleging that he was known by the nickname "the punisher."  (T. 221-22.)  He further stated that he had witnessed Randolph "rob and assault people" on other occasions.[7]   (T. 212-213.)   Even if this testimony were credited, it merely provides justification for Sparks' subjective fear of Randolph when the two men had an altercation in the store.  It does not provide any objective fear of Randolph at the time that Sparks attacked him with the milk crate later in the evening after Sparks went to eat at a nearby restaurant.  (T. 226-27.)  Sparks claimed that, during that time, Randolph "had time to get whatever he wanted to get" (*i.e.*, a weapon) and that this fear caused Sparks to "preemptively [strike]" him, as he argued to the Court of Appeals.  (R. 655).  Put differently, even under his own version of events, Sparks was not responding to any actual use of physical force by Randolph when he struck Randolph in the head with the milk crate.  (T. 226-27.)

Sparks did not identify anything that Randolph actually did or said at the time of the assault at issue, that could have given Sparks a reasonable belief the he needed to strike Randolph in the head.  *See Goetz*, 68 N.Y.2d at 106, n.4 (noting that justification defense has an "objective" requirement that a reasonable person would feel fear and be unable to retreat); *Matter of Y.K.*, 87 N.Y.2d at 434 (same).  Instead, there was a lengthy lapse of time between Randolph and Sparks' initial altercation and Sparks' use of force, during which Sparks could have retreated (and, in fact, did leave the scene), but then

---

[7]  Sparks' testimony about Randolph's reputation was inconsistent with Alrbyai's testimony. Alrbyai testified that although he knew Randolph from the neighborhood, he had never seen Randolph try to rob or harm a customer and had never heard anyone refer to him by that provocative nickname. (T. 168-70, 184.)

returned only to use force.

Because there was no reasonable view of the evidence that would have permitted the jury to find that Sparks was justified in using physical force against Randolph, he cannot establish that the failure to charge the defense violated his due process rights. *See, e.g.*, *Collins v. Artus*, No. 08 Civ. 1936, 2009 WL 2633636, at *6 (S.D.N.Y. Aug. 26, 2009) (dismissing habeas petition where "there is no evidence that [petitioner] reasonably believed that he was in imminent, life-threatening danger" and noting that "petitioner has never even alleged that he attempted to withdraw before resorting to violence although he was standing on an open street corner with presumably many opportunities for escape"); *Parsons v. Walsh*, No. 01-CV-5840, 2003 WL 21143074, at *2-3 (E.D.N.Y. May 12, 2003) (dismissing habeas petition and finding that trial judge's decision not to include justification charge comported with New York law since no reasonable jury relying solely on defendant's testimony would have believed that he feared for his life or had no means of escape).

In short, applying the legal principles governing a jury charge of justification, the evidence did not support a justification charge. The state courts' rejection of Spark's claim concerning the justification defense was neither contrary to, nor an unreasonable application of, clearly established federal law. Accordingly, the claim does not merit habeas relief.

B.     **The Trial Court's *Sandoval* Ruling Was Harmless**

As a second basis for habeas relief, Sparks argues that the trial court's modification of its initial pre-trial *Sandoval* ruling – ultimately permitting the prosecution to question Sparks on the facts surrounding his prior conviction for robbery – violated his

due process rights.  (Petition at 8.)  Respondent argues that the trial court's ruling was harmless due to the overwhelming evidence against Sparks.  (Resp. Mem. at 21-25.)

Sparks' claim was raised on direct appeal and rejected on the merits by both the First Department and the Court of Appeals. The First Department held that the trial court "properly exercised its discretion" in making, and then modifying, its *Sandoval* ruling.  (T. 210.)  Even if that discretion was improper, however, that court concluded that any error was harmless "in light of the overwhelming evidence against [Sparks]."  (T. 211.)

The Court of Appeals, unlike the First Department, agreed with Sparks that it was error for the trial court to modify its *Sandoval* ruling. Its March 30, 2017 affirmance did not, however, explain the basis for that error. Rather, the Court of Appeals concluded that regardless of any error, "the error is harmless" because "the evidence of defendant's guilt is overwhelming, and there is no significant probability that the outcome of the trial would have been different in the absence of that error."  (R. 1247.)  In other words, even though the trial court's "adjustment" of its *Sandoval* ruling was incorrect, the limited amount of information that the prosecutor elicited at trial was ultimately harmless and there was "no significant probability" that the testimony affected the jury's verdict.  (*Id.*)

This Court agrees. A federal habeas court is not a "vehicle to second-guess the reasonable decisions of state courts."  *Parker*, 567 U.S. at 38; *see also*, *Pine*, 103 F. Supp. 3d at 275 (citing *Wood*, 558 U.S. at 301).  Here, the state courts' decision affirming the trial court's *Sandoval* ruling was neither contrary to, nor an unreasonable application of, clearly established federal law. Accordingly, the claim does not merit habeas relief.

As explained above, in *Sandoval*, the New York Court of Appeals established parameters for the scope of cross-examining a defendant about his prior "criminal, vicious

25

and immoral acts." *Sandoval*, 34 N.Y.2d at 373.  A claim based on an alleged *Sandoval*

violation "deals with [a state-law] evidentiary question and presents an issue for habeas

relief only if the petitioner establishes that the trial court committed error that constitutes

a deprivation of a constitutionally recognized right."  *Mastin v. Senkowski*, 297 F. Supp.

2d 558, 593 (W.D.N.Y. 2003) (citing *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir.

1998)); *see also Sims v. Ercole*, No. 09 Civ. 4398, 2010 WL 1685434, at *5 (S.D.N.Y.

April 23, 2010) ("Alleged [state] trial court errors on [*Sandoval*] evidentiary matters do not

pose a federal constitutional issue unless 'the trial court committed error that constitutes

a deprivation of a constitutionally recognized right'") (internal citations omitted); *Lewis v.

New York*, No. 14-CV-3906, 2017 WL 5591624, at *8 (E.D.N.Y. Oct. 28, 2017) ("Unless

the erroneously admitted evidence was the fulcrum that provided the basis for conviction

or removed a reasonable doubt that would otherwise be present, there is no constitutional

violation that would warrant federal habeas relief").  Only the introduction of improper

evidence that "is so extremely unfair that its admission violates fundamental conceptions

of justice" denies a petitioner's right to due process and may be reviewed by the habeas

court.  *Dunnigan*, 137 F.3d at 125 (quoting *Dowling v. United States*, 493 U.S. 342, 352

(1990) (internal quotations omitted)).  Evidence improperly admitted is "so extremely

unfair" when, "viewed objectively in light of the entire record before the jury, [the evidence]

was sufficiently material to provide the basis for conviction or to remove a reasonable

doubt that would have existed on the record without it. In short it must have been crucial,

critical, [and] highly significant."  *Collins v. Scully*, 755 F.2d 16, 19 (2d Cir. 1985).

Here, the prosecution's cross-examination of Sparks did not elicit any information

that would rise to this high standard to merit habeas relief. The Petition does not

demonstrate, or even allege, how the prosecution's cross-examination about Sparks' prior conviction and limited colloquy about the fact that it stemmed from an attempted robbery affected the jury's verdict.  And a review of the record certainly does not show that the testimony "provide[d] the basis for [his] conviction" or "remove[d] a reasonable doubt that would have existed on the record without it." *Id.*

In considering Sparks claim, the Court of Appeals recounted "overwhelming" evidence that Sparks committed an unjustified assault against Randolph. (R. 1214.) Security video footage depicted Sparks leaving the deli and immediately hitting Randolph, who had merely been "stumbl[ing] by," in the head, with a milk crate. Officer Santana, who was driving by witnessed the assault, described it in exactly the same way.  (R. 227.) The evidence also easily established that Sparks' claims of subjective fear were simply false. Alrbyai testified that when Sparks stepped into the store just before he hit Randolph, he requested that Alrbyai hand him a stick, a request Alrbyai rejected by telling Sparks that it was "enough" that he had already punched Randolph. (R. 229.) Sparks' request thoroughly undermines the argument that the assault on the intoxicated Randolph was motivated by reasonable fear of an imminent attack.

In contrast to the overwhelming evidence against Sparks, the testimony concerning Sparks' prior conviction was but a minor event. The entire exchange on the subject unfolds over less than two pages of the prosecutor's 64-page cross-examination of Sparks. (*See* T. 280-282.) There was no subsequent testimony regarding the prior conviction, nor did the prosecutor reference Sparks' testimony on the subject during summation. (*See* T. 380-467.) *See, e.g., United States v. Mitchell,* 328 F.3d 77, 84 (2d Cir. 2003) (prosecutor's comments, even if improper, were "not prejudicial in view of the

fact that they were brief and isolated and in light of the substantial evidence of guilt adduced by the government [at trial]"); *Davidson v. Cunningham*, No. 16-CV-01125, 2017 WL 3738560, at *12 (E.D.N.Y. Aug. 29, 2017), certificate of appealability denied, No. 17-3002, 2018 WL 4691796 (2d Cir. July 9, 2018) (dismissing habeas petition and finding that despite prosecutor's improper question during cross-examination, "compelling evidence . . . was presented at trial for a jury to conclude beyond a reasonable doubt that petitioner was guilty, and there is no significant probability that this 'isolated' question contributed to petitioner's conviction, or had a substantial or injurious effect on the jury's verdict") (internal quotations omitted); *People v. Yancey*, 87 A.D.3d 849, 850, 929 N.Y.S.2d 133, 135 (1st Dept. 2011) (trial court properly denied defendant's mistrial motion made after a police witness briefly referred to an uncharged crime because "[t]he offending testimony caused little or no prejudice in the context of the case") (citing *People v. Santiago*, 52 N.Y.2d 865, 866, 418 N.E.2d 668, 669 (1981)).

Finally, as discussed earlier, any potential prejudice that could have resulted from including this cross-examination was mitigated by the trial judge's jury instruction, explicitly warning the jury:

> The fact that a defendant has been previously convicted of a crime, is not proof of the instant crime. It is not being offered to prove he has a propensity to commit crime. The only purpose it is being introduced is on the question of the degree of credibility you wish to give to his trial testimony. The defendant's prior conviction may be used by you only for this purpose. You and you alone have the right to determine whether the defendant, despite his conviction is telling the truth or because of considering his conviction, he may not be telling the truth.

(Tr. at 347.) The judge's instructions further eliminated the possibility of actual prejudice. *See, e.g.*, *Osorio v. Conway*, 496 F. Supp. 2d 285, 302 (S.D.N.Y. 2007) (petitioner suffered no prejudice from prosecutor's summation when trial court "mitigated

any prejudice" by instructing the jury that "what the lawyers say is not evidence"); *Garcia v. Griffin*, No. 16 Civ. 2584, 2018 WL 9801209, *18 (S.D.N.Y. May 8, 2018) (petitioner was not prejudiced when trial judge offered mitigating instruction); *Velazquez v. Poole*, 614 F. Supp. 2d 284, 318 (E.D.N.Y. 2007) (prosecutor's improper summation was sufficiently mitigated when trial court's closing charge instructed jury that "[jury] must determine both the credibility of each witness and the weight [of their] testimony").

In sum, Sparks' claim the trial court violated his due process right by permitting the prosecutor to question him about the facts of his prior conviction is meritless. Habeas relief for such a claim is warranted "only if the error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Liggins v. Burge*, 689 F. Supp. 2d 640, 651, n.7 (S.D.N.Y. 2010) (quoting *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993)). The trial court's *Sandoval* ruling that permitted the prosecution to question Sparks on the underlying facts of his prior robbery conviction was harmless. The state courts' rejection of Sparks' claim was neither contrary to, nor an unreasonable application of, federal law. Accordingly, Sparks' claim for habeas relief on this ground lacks merit.

## Conclusion

For the foregoing reasons, I recommend that the Petition for habeas corpus be DENIED and the case DISMISSED. Petitioner's remaining arguments, to the extent not addressed explicitly herein, have been considered by the Court and found to be without merit. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the Chambers of the Honorable Valerie E. Caproni,

United States Courthouse, 40 Foley Square, Room 240, New York, New York 10007, and

to the Chambers of the undersigned, 500 Pearl Street, Room 1960, New York, New York

10007. **Failure to file timely objections will preclude appellate review.**

Respectfully submitted,

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated:      October 24, 2019
            New York, New York

Copies transmitted to all counsel of record and mailed to:

Yusuf Sparks
14-A-0340
Elmira Correctional Facility
PO Box 500
1879 Davis Street
Elmira, NY 14901-0500